IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Ofa Kareem Donaldson, Sr., | : | |
| Debtor. | : | Bankruptcy No. 16-15449-MDC |
| | | |
| Ryan Kerwin and Xtreme Caged Combat, | : | |
| Plaintiffs, | : | |
| v. | : | Adversary No. 16-00445-MDC |
| Ofa Kareem Donaldson, Sr., | : | |
| Defendant. | : | |

# MEMORANDUM

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

## I. INTRODUCTION

Plaintiffs Ryan Kerwin ("Kerwin") and Xtreme Caged Combat (together with Kerwin, the "Plaintiffs") seek to have a judgment (the "Judgment") and related contempt sanctions (the "Contempt Sanctions") they obtained in a trademark infringement action (the "Trademark Infringement Action") in the United States District Court for the Eastern District of Pennsylvania (the "District Court")[1] against Ofa Kareem Donaldson, Sr. (the "Debtor") and other non-debtors deemed nondischargeable in the Debtor's bankruptcy case pursuant to various sections of the Bankruptcy Code, 11 U.S.C. §§101 *et seq*. At the conclusion of the trial on the Plaintiffs' nondischargeability action, this Court ruled in favor of the Debtor on the count of the Complaint that sought to have the Contempt Sanctions deemed nondischargeable pursuant to §523(a)(7) of the Bankruptcy Code, as well as the counts of the Complaint that sought to have the Debtor's discharge denied pursuant to §727(a)(6) of the Bankruptcy Code. The

---

[1] The Trademark Infringement Action in the District Court was styled *Xtreme Caged Combat, et al. v. ECC Fitness, et al.*, Case No. 12-3855 (E.D. Pa.).

Court, however, found in favor of the Plaintiffs on the count of the Complaint seeking to have the Contempt Sanctions deemed nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code because they were for "willful and malicious injury." Remaining for disposition is the count of the Complaint seeking to have the Judgment deemed nondischargeable, again pursuant to §523(a)(6) of the Bankruptcy Code as a debt for "willful and malicious injury." For the reasons set forth herein, the Court finds that the Judgment is nondischargeable because it is a debt the Debtor incurred for willful and malicious injury to the Plaintiffs.

II.     **FACTUAL AND PROCEDURAL BACKGROUND**

    A.     **The Trademark Infringement Action and Jury Verdict**

Kerwin owns and operates Xtreme Caged Combat, a sole proprietorship.[2] Xtreme Caged Combat is a fitness gym and training facility in the Philadelphia area.[3] The Debtor was a partner of another fitness gym and training facility in the Philadelphia area called ECC Fitness, also known as Extreme Cage Combat ("ECC Fitness").[4] In addition to fitness and training, both Xtreme Caged Combat and ECC Fitness engaged in mixed martial arts fight promotion.[5] After a review of the record and pleadings in this case, it is unclear to the Court precisely what the relationship was between Kerwin and the Debtor, but Kerwin testified that at some point, estimated to be in 2011, he approached the Debtor to do a collaboration between their businesses which either did not come to fruition or was short-lived.[6] Whatever their relationship was, it devolved to the point where the Plaintiffs filed the Trademark Infringement Action in the District Court against the Debtor, his partner Steve Rosenblum and ECC Fitness (collectively, the "Trademark Infringement Action Defendants") in July 2012.

In the Trademark Infringement Action the Plaintiffs alleged that the Trademark Infringement

---

[2] Adv. Pro. Docket No. 15.
[3] Trial Transcript, 69:3 to 69:9.
[4] Trial Transcript, 69:3 to 69:9; 80:2 to 80:8.
[5] Trial Transcript, 88:15 to 89:6.
[6] Trial Transcript, 123:23 to 124:6.

Action Defendants infringed on Xtreme Caged Combat's trademark in various ways to promote their business.[7] The Plaintiffs further alleged that the Trademark Infringement Action Defendants' actions were deliberate, willful and wanton, intended to cause confusion and mistake, and intended to deceive as to their affiliation, connection and association with the Plaintiffs.[8] On August 13, 2014, the Plaintiffs obtained a jury verdict in the Trademark Infringement Action against the Trademark Infringement Action Defendants. The verdict slip (the "Jury Verdict Slip") completed by the jury in the Trademark Infringement Action reflects that the jury found by a preponderance of the evidence that the Trademark Infringement Action Defendants intentionally infringed upon the Plaintiffs' trademark, and the jury awarded the Plaintiffs statutory damages of $76,800.00.[9]

        B.        **The Plaintiffs' Post-Judgment Discovery Efforts and the Debtor's Contempt**

After the judgment was entered in the Trademark Infringement Action, the Plaintiffs proceeded with post-judgment collection efforts and served the Trademark Infringement Action Defendants with post-judgment interrogatories and requests for production of documents.[10] The Trademark Infringement Action Defendants did not respond to those discovery requests, prompting the Plaintiffs to file a motion to compel responses.[11] The District Court granted that motion to compel (the "Discovery Order"),[12] and upon the Plaintiffs' subsequent contempt motion, on January 22, 2015 entered an order (the "Sanctions Order") holding the Debtor in contempt of the Discovery Order and providing that his failure to comply with the Discovery Order within 14 days would result in a $1,000.00 penalty that would increase by $50.00 per day until the Debtor complied.[13]

Following the passage of over a year and two additional contempt motions by the Plaintiffs, on

---

[7] Trademark Infringement Action, Complaint at ¶¶20,21, 23-26.

[8] Trademark Infringement Action, Complaint at ¶29.

[9] Trial Exhibit P-1.

[10] Trial Transcript, 95:24 to 96:3.

[11] Trial Transcript, 96:3 to 96:7.

[12] Trial Exhibit P-7.

[13] Trial Exhibit P-9.

3

July 21, 2016, the District Court entered an order again holding the Debtor in contempt of the Discovery Order and directing the clerk of the District Court to issue a bench warrant for the Debtor's arrest and imprisonment until he complied with the Discovery Order by responding to all discovery requests made by the Plaintiffs.[14] The Debtor was arrested on July 25, 2016, and released on the same day.[15] On August 12, 2016, the Debtor provided responses to the Plaintiffs' interrogatories ranging from one word to one sentence, but did not provide any documents in response to the Plaintiffs' request for production of documents.[16] The District Court then issued an order on September 6, 2016, directing the Debtor to supplement his responses to the Plaintiffs' discovery requests under oath by September 16, 2016, and to appear for any deposition the Plaintiffs noticed, the failure of which would result in the Debtor's reincarceration.[17] The Debtor provided supplemental responses to the discovery requests on September 15, 2016, which the District Court, upon another motion to compel by the Plaintiffs, determined did not comply with the District Court's previous orders and on November 17, 2016, ordered the Debtor be reincarcerated (the "Non-Compliance Order").[18] The District Court found, "in light of the [Debtor's] repeated and willful failure to respond to this Court's orders," that imprisonment was the only way to effectuate the Debtor's compliance.[19] As a result, the Debtor was incarcerated for a second time.[20] On November 21, 2016, the District Court ordered the Debtor released and directed him to provide full and complete responses to the Plaintiffs' discovery requests.[21]

    C.    **The Nondischargeability Action**

On August 1, 2016, while the post-judgment discovery process was continuing, the Debtor filed a

---

[14] Trial Exhibit P-11.

[15] Trial Transcript, 99:17 to 100:23.

[16] Trial Exhibit P-12; Trial Transcript, 100:24 to 101:102:14.

[17] Trial Exhibit P-13.

[18] Trial Exhibit P-15; Trial Transcript, 103:21 to 104:16.

[19] Trial Exhibit P-15 at n.1.

[20] Trial Transcript, 104:11 to 104:16.

[21] Trademark Infringement Action, Docket Nos. 129, 130.

4

voluntary petition under chapter 13 of the Bankruptcy Code.[22] The Debtor's case was converted to chapter 7 on September 16, 2016.[23] On December 15, 2016, the Plaintiffs filed an adversary complaint (the "Nondischargeability Complaint") against the Debtor seeking determinations that the Judgment and Contempt Sanctions are nondischargeable debts pursuant to §§523(a)(6) and (a)(7) of the Bankruptcy Code and that the Debtor should not be granted a general discharge pursuant to §727(a)(6) of the Bankruptcy Code.[24] Specifically, the Nondischargeability Complaint sets forth five counts. Counts 1, 2, and 3 assert that the Contempt Sanctions are nondischargeable pursuant to §§523(a)(7),[25] 523(a)(6),[26] and 727(a)(6),[27] respectively. Counts 4 and 5 assert that the Judgment is nondischargeable pursuant to §§727(a)(6) and 523(a)(6), respectively. As noted above, the Judgment amount entered against the Debtor was $76,800.00. The Contempt Sanctions the Plaintiffs asserted are nondischargeable total $30,300.00.[28]

### D. The Plaintiffs' Motion for Summary Judgment and Trial

On May 23, 2017, the Plaintiffs moved for summary judgment ("Summary Judgment Motion")

---

[22] Bankr. Docket No. 1.

[23] Bankr. Docket No. 24.

[24] Adv. Pro. Docket No. 1.

[25] Section 523(a)(7) excepts from an individual debtor's general discharge under §727 any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty – (A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition." 11 U.S. C. §523(a)(7).

[26] Section 523(a)(6) excepts from an individual debtor's general discharge under §727 any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

[27] Section 727(a)(6) provides that the court shall grant an individual chapter 7 debtor a discharge unless, in relevant part here, "the debtor has refused, in the case – (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. §727(a)(6). Although the Complaint asserted that the Contempt Sanctions (Count 3) and Judgment (Count 4) should be deemed nondischargeable pursuant to §727(a)(6), a denial of a debtor's discharge based on §727(a)(6) is dispositive of the right to a general discharge, rather than the discharge of a specific debt. *Stapleton v. Klika (In re Klika)*, 2007 Bankr. LEXIS 856, at *10 n.3 (Bankr. D. Del. Mar. 16, 2007). The Court therefore viewed Counts 3 and 4 of the Complaint as claims that the Debtor should be denied a general discharge.

[28] The Plaintiffs arrived at this total by calculating the sum of (i) the initial sanction of $1,000.00 set forth in the Discovery Order, and (ii) the amount of additional sanctions that accumulated at a rate of $50.00 per day from the date that was 14 days after the entry of the Sanctions Order, February 5, 2015, through the date of the Debtor's compliance with the Discovery Order, September 15, 2016. That totaled 586 days, for additional sanctions of $29,300.00, bringing the total Contempt Sanctions to $30,300.00. Complaint, at ¶¶33-35.

5

on each count of the Nondischargeability Complaint, supported by the Plaintiffs' Statement of Undisputed Facts and an affidavit executed by Kerwin.[29] The Debtor did not timely respond to the Summary Judgment Motion, and on July 21, 2017, the Plaintiffs submitted what was designated a Joint Pre-Trial Statement, but in fact was only the Plaintiffs' pre-trial statement because the Debtor failed to engage with the Plaintiffs to prepare a joint pre-trial statement.[30] On August 16, 2017, the Court held a pre-trial hearing (the "Pre-Trial Hearing"), at which time it directed the Debtor to file a response to the Summary Judgment Motion ("Summary Judgment Response") by September 5, 2017, with any reply from the Plaintiffs ("Summary Judgment Reply") due by September 19, 2017.[31] Trial was also scheduled for October 27, 2017. The Debtor filed the Summary Judgment Reply on September 5, 2017, but did not respond to the Plaintiffs' Statement of Undisputed Facts.[32] The Plaintiffs filed the Summary Judgment Reply on September 20, 2017. The Plaintiffs filed a second pre-trial memorandum on October 10, 2017, that was substantively largely the same as the Joint Pre-Trial Memorandum the Plaintiffs filed on July 21, 2017.[33] The Debtor did not file a pre-trial statement.

The Court conducted the trial on October 27, 2017. At the outset of the trial, the Court denied the Summary Judgment Motion with respect to Count 1, based on its conclusion that §523(a)(7) was inapplicable to the Judgment and Contempt Sanctions as a matter of law because they were both payable to the Plaintiffs, and not payable "to and for the benefit of a governmental unit" as required under §523(a)(7). Likewise, the Court denied the Summary Judgment Motion with respect to Counts 3 and 4 based on its conclusion that §727(a)(6) was inapplicable to the Judgment and Contempt Sanctions because the Debtor had not refused to obey an order of this Court, as required under §727(a)(6), but rather

---

[29] Adv. Pro. Docket Nos. 16, 17, 19 and 22.

[30] Adv. Pro Docket No. 25. The Joint Pre-Trial Statement represented that "Plaintiff also provided Defendants' counsel with a preliminary draft of this Joint Pre-Trial Statement on July 14, 2017, as instructed so that he could collaborate with Plaintiff regarding any inclusions or modifications prior to the July 21, 2017, submission deadline. Defendants' counsel has refused to respond since receiving that draft." Joint Pre-Trial Statement at §III.

[31] Adv. Pro. Docket No. 26.

[32] Adv. Pro. Docket No. 29.

[33] Adv. Pro. Docket No. 32.

had incurred the Contempt Sanctions for failing to obey the District Court's orders in the Trademark Infringement Action. At the conclusion of trial, the Court rendered judgment in favor of the Debtor on Counts 1, 3 and 4 for the same reasons.

With respect to Count 2's allegation that the Contempt Sanctions were nondischargeable under §523(a)(6) because they constituted a debt for "willful and malicious injury," the Court held that the willful element was established by the District Court's finding in the Non-Compliance Order that the Debtor's failure to comply with the District Court's orders was "repeated and willful." The Court, however, declined to find at the summary judgment stage that willful non-compliance with court orders also satisfied §523(a)(6)'s maliciousness element as a matter of law. The Court therefore found that the Plaintiffs were required to produce evidence at trial to establish the maliciousness element.[34] At the conclusion of trial, after considering Kerwin's testimony and the documentary evidence produced regarding the District Court orders, the Court determined that the Plaintiffs established the maliciousness element of §523(a)(6) based on the repeated failure of the Debtor to comply with the District Court's order without justification.[35]

With respect to Count 5's allegation that the Judgment was nondischargeable under §523(a)(6) because it constituted a debt for "willful and malicious injury," the Court held that the willful element was

---

[34] Plaintiffs argued at trial that the Debtor's failure to respond to the Plaintiffs' Statement of Undisputed Facts resulted in those facts being deemed admitted not just for purposes of the denied Summary Judgment Motion, but also for purposes of trial. Trial Transcript, 47:1 to 48:24. The Plaintiffs' position is inconsistent with Fed. R. Civ. P. 56(e)(2), which provides that "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … (2) consider the fact undisputed *for purposes of the motion*." (emphasis added). The Plaintiffs' position ignores this limitation in the Rule. *See Herzog v. Leighton Holdings (In re Kids Creek Partners, L.P.)*, 1997 Bankr. LEXIS 215, at *5-*6 (Bankr. N.D. Ill. Feb. 28, 1997) (failure to properly dispute an opposing party's undisputed facts resulted in those facts being deemed admitted for purposes of summary judgment, but not necessarily for trial); *Southwest Fin. Servs. Of Las Cruces v. Tarango (In re Turango)*, 2010 Bankr. LEXIS 1786, at *6 (Bankr. D.N.M. May 21, 2010) ("Fairness dictates that the Court should not deem facts to be conclusively established for trial in connection with the denial of summary judgment where the facts are of a type reasonably susceptible to being disputed on the presentation of additional evidence and the opposing party wishes to present such additional evidence ….").

[35] The Court did not allow testimony or other evidence from the Debtor on the issues that remained for trial based on the Debtor's failure to file a pretrial statement as required by L.R. 7016-1. Trial Transcript, 29:18 to 29:25. *See, e.g., Dangel v. Northwood/Nat'l Provider Network, L.L.C. (In re Beckett Healthcare, Inc.)*, 2004 Bankr. LEXIS 265, at *4 (Bankr. E.D. Pa. Feb. 24, 2004) (providing for court-imposed sanctions if any party failed to timely file the pretrial statement). As such, the Debtor presented no testimony or evidence explaining any justification for his repeated failure to comply with the District Court's orders. Trial Transcript, 162:23 to 163:5.

established by the jury verdict in the District Court finding that the Trademark Infringement Action Defendants intentionally infringed upon the Plaintiffs' trademark. The Court also concluded, however, that the Jury Verdict Slip made no finding with respect to whether the infringement was malicious, nor did any other orders from the District Court, and therefore the Plaintiffs would still need to produce evidence at trial to establish that element in order for the Court to determine the Judgment was nondischargeable.

Kerwin then testified regarding, among other things, the effect of the Debtor's trademark infringement on him and Xtreme Caged Combat. Kerwin testified that as a result of the Debtor's infringement on the Plaintiffs' trademark, banks and individuals accused him of stealing money from accounts of ECC Fitness's clients.[36] The Plaintiffs introduced an email Kerwin received from a client of ECC Fitness, which attached a bank statement reflecting charges from ECC Fitness.[37] Kerwin testified that he received the email after having been contacted by the ECC Fitness client accusing him of committing fraud and stealing money out of her bank accounts.[38] Kerwin testified that he had to explain that it was the Debtor and ECC Fitness that had "committed these acts."[39] Kerwin further testified that he had received similar inquiries from ECC Fitness clients, accusing him of "stealing money out of accounts, committing fraud and other … egregious acts all because I was confused to my business being called Xtreme Caged Combat, which is a fitness gym, with Extreme Cage Combat Fitness which is a fitness gym which is probably located perhaps 20 minutes apart."[40] Kerwin also testified that banks were "calling [him] on this issue, including individuals that even after I explained the confusion regarding the businesses who then threatened to have me prosecuted."[41]

---

[36] Trial Transcript, 64:25 to 65:3.

[37] Trial Exhibits P-2, P-3.

[38] Trial Transcript, 68:11 to 68:13.

[39] Trial Transcript, 68:13 to 68:16.

[40] Trial Transcript, 69:3 to 69:9.

[41] Trial Transcript, 69:11 to 69:13.

The Plaintiffs also produced a bounced check from ECC Fitness to a long-time vendor of the Plaintiffs, which Kerwin credibly testified was signed by the Debtor,[42] and a subsequent email from that vendor to Kerwin reflecting that the vendor believed the bounced check came from Xtreme Caged Combat.[43] Kerwin testified that this represented "an example of the calls [he'd] get from businesses that were basically billed for money from the defendant … over a period well over a year."[44]

Kerwin also testified that he "lost students [he] would have otherwise had from [his] business because of the reputation that [he] was pretty much suffering on account of the confusion with the defendant. People were not able to make the differentiation between Xtreme Caged Combat which is a gym and Extreme Cage Combat Fitness which was a gym."[45] He also testified that fighters affiliated with each gym "were caught in the middle of the dispute and … naturally people take sides which obviously affected business, both at the gym and the cage fighting promotion."[46]

At the conclusion of trial, the Court took Count 5 of the Nondischargeability Complaint under advisement to further consider whether the Plaintiffs had established that the Judgment constituted a debt for malicious injury.

### III. DISCUSSION

Exceptions to discharge are construed narrowly, strictly and liberally in favor of debtors. *In re DiGiovanni*, 446 B.R. 709, 715 (Bankr. E.D. Pa. 2011) (*citing In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995)). A creditor objecting to the dischargeability of a debt bears the burden of proving, by a preponderance of the evidence, that the particular debt falls within one of the discharge exceptions enumerated in §523(a). *DiGiovanni*, 446 B.R. at 716. In determining whether a creditor has met its burden under §523(a)(6), courts recognize that the terms "willful" and "malicious" are separate elements

---

[42] Trial Transcript 76:16 to 80:19.

[43] Trial Exhibits P-4, P-5.

[44] Trial Transcript, 81:18 to 81:23.

[45] Trial Transcript, 88:11 to 88:17.

[46] Trial Transcript, 89:2 to 89:6.

9

that must each be proven. *Id.*; *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("The two concepts are said to be distinct requirements.").

As noted above, with respect to the Judgment the Court has already determined that the willfulness element of §523(a)(6) was established by the jury verdict finding that the Debtor intentionally infringed on the Plaintiffs' trademark. The question for this Court is therefore whether the Plaintiffs have also established that the Judgment constitutes a debt for malicious injury. The standard in the Third Circuit for whether a debt is one for malicious injury under §523(a)(6) is whether the injury is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *DiGiovanni*, 446 B.R. at 716 (*quoting In re Coley*, 433 B.R. 476, 497 (Bankr. E.D. Pa. 2010)); *see also Conte v. Gautam (In re Conte)*, 33 F.3d 303, 308 (3d Cir. 1994) (*citing In re Braen*, 900 F.2d 621 (3d Cir. 1990)); *In re Gotwald*, 488 B.R. 854, 866 (Bankr. E.D. Pa. Mar. 26, 2013). In order to find that the Judgment meets this requirement, the Court must find that the Debtor's actions either were taken with the specific goal of causing harm to the Plaintiffs or must have been substantially certain to have caused harm. *Jacobs*, 381 B.R. at 138.

Malice for purposes of §523(a)(6) also requires some proof that a debtor's conduct was motivated by some reason other than a debtor's personal financial interests. *TotalFacility, Inc. v. Brown (In re Brown)*, 557 B.R. 363, 374 (Bankr. E.D. Pa. 2016); *Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434, 446 (Bankr. E.D. Pa. 2013) ("To be malicious, the conduct must have been undertaken *without just cause or excuse*. In other words, even though an actor may know that her breach will harm the counter party to the contract, malice may not be inferred from the breaching party's conduct if her breach was intended to maximize her personal financial interests.") (emphasis in original) (internal citations omitted). Malice can be implied from the nature of the act. *Butler v. Butler (In re Butler)*, 2013 Bankr. LEXIS 4296, at *9 (Bankr. N.D. Ga. Sept. 9, 2013); *see also In re Luby*, 438 B.R. 817, 841 (Bankr. E.D. Pa. 2010) (finding that §523(a)(6)'s requirement of malicious injury was satisfied by inference based on the totality of the debtor's conduct in infringing on the plaintiffs' trademark).

In the context of debts for trademark or patent infringement, various courts have concluded that

intentional infringement satisfied the maliciousness requirement of §523(a)(6). *See, e.g., Ocean Innovations, Inc. v. Ahern (In re Ahern)*, 541 B.R. 438 (Bankr. W.D. Wis. 2015) (finding a judgment for patent infringement met the requirements for willful and malicious injury under §523(a)(6)); *Butler*, 2013 Bankr. LEXIS 4296 (finding a judgment for trademark infringement constituted a debt for willful and malicious injury under §523(a)(6)); *Treadwell v. Singer (In re Singer)*, 2010 U.S Dist. LEXIS 97604 (D.N.J. Sept. 17, 2010) (finding a judgment for trademark infringement constituted a debt for willful and malicious injury under §523(a)(6)).

In *Ocean Innovations*, a district court entered judgment against the debtor for patent infringement. *Id.* at 442. After the debtor filed its bankruptcy case, the judgment holders sought a finding that the patent infringement judgment was nondischargeable pursuant to §523(a)(6). *Id.* at 443. The bankruptcy court found that the judgment satisfied §523(a)(6)'s requirement of willful and malicious injury. In evaluating the maliciousness element, the *Ocean Innovations* court looked to *Rigoni Di Asiago S.P.A. v. Mucci (In re Mucci)*, 458 B.R. 802 (Bankr. D. Conn. 2011), which found that a district court judgment for trademark infringement constituted a debt for willful and malicious injury under §523(a)(6) because the district court had already determined that the infringement was malicious, deliberate and willful. The *Ocean Innovations* court noted that the *Mucci* court found trademark infringement a categorically harmful activity, and the "intent to infringe and the intent to deprive the owner of the benefit of his property are 'opposite sides of the same coin.'" *Id.* at 448 (*quoting Mucci*, which in turn was quoting *Smith v. Entrepreneur Media, Inc. (In re Smith)*, 2009 Bankr. LEXIS 4582 (B.A.P. 9th Cir. Dec. 17, 2009)). The *Ocean Innovations* court found that the patent infringement judgment before it satisfied §523(a)(6)'s malice requirement:

> Here, the Judgment establishes that the Defendant acted intentionally and willfully to infringe on the Plaintiffs' patents … The infringement necessarily deprived the Plaintiffs of property. Even if [the debtor] did not act intending to injure the Plaintiffs, based upon his knowledge of the patent and notice to refrain from infringement, he must have been substantially certain that selling his units would invade the legal right of [the plaintiffs], thereby causing an injury … [The debtor's] actions were intentional and deliberate wrongful acts, done without just cause or legal excuse. Those actions produced injury and harm to [the Plaintiffs]. The harm was the clearly foreseeable consequence of his actions. His actions were malicious and within the meaning of section 523(a)(6).

11

*Id.* at 448-49.

In *Butler*, a district court jury had rendered a verdict finding the debtor liable for, among other things, trademark infringement. 2013 Bankr. LEXIS 4296, at *2. The jury found that the plaintiff had proven by clear and convincing evidence that the infringement was willful. *Id.* In a post-trial order on damages, the district court emphasized the defendants' conduct, including the "seeming disregard for the people they harmed or the reputation they sullied." *Id.* at *3. The district court also awarded attorneys' fees to the plaintiffs, finding that the infringement represented an exceptional case because the jury had determined that the defendants willfully violated the plaintiffs' trademark rights. *Id.* In evaluating whether the judgment was nondischargeable in the Debtor's subsequent bankruptcy under §523(a)(6), the bankruptcy court acknowledged that the jury's verdict, by itself, did not appear to determine whether the acts themselves were done willfully or if the acts were willfully done with intent to cause harm, as required by §523(a)(6). *Id.* at *15. However, the court reasoned that "intentional infringement is tantamount to intentional injury under bankruptcy law." *Id.* at *16 (*citing Mucci*, 458 B.R. at 813). The court concluded that the plaintiffs established the malice required by §523(a)(6) based on the nature of a trademark infringement claim for which the judgment was entered, the district court's discussion of the defendants' egregious behavior, and the jury's finding of willfulness. *Id.* at *21. The court was "unable to imagine a scenario where a defendant could egregiously and willfully misuse another's trademark in a a way that is likely to cause confusion, mistake or deception and also show just cause or excuse. Further, Defendant has not provided the Court with an alleged just cause or excuse for his actions." *Id.*

In *Treadwell*, the district court found the debtor in contempt of a prior order enjoining the use of an entity's trademark. 2010 U.S. Dist. LEXIS 97604, at *6. The debtor's liability was to be measured by profits the debtor earned through use of the protected mark. *Id.* After the debtor filed for bankruptcy, the trademark holder sought an order declaring the debtor's debt nondischargeable under §523(a)(6), among others. *Id.* at *7. The bankruptcy court found the debt was nondischargeable as a debt incurred for willful and malicious injury. *Id.* at *8. On appeal the debtor conceded the willful element of §523(a)(6) because he was in contempt for willfully violating the injunction, but argued that the malicious element of

12

§523(a)(6) was not met. *Id.* at *14. The district court disagreed, concluding that purposeful trademark infringement amounts to irreparable injury as a matter of law. *Id.* at *15. The court reasoned that "there is no lack of certainty that infringing upon one's trademark will result in injury. [The debtor] acted willfully and purposely to infringe upon [the plaintiff's] trademark. As a result, [the plaintiff] suffered the injury of having her trademark infringed. Because this action is both the action [the debtor] took and the injury [the plaintiff] suffered, applying either an objective or subjective standard of culpability, [the debtor's] conduct was clearly malicious." *Id.* at *16. The court also reasoned that the debtor knew his actions were wrongful and without just cause or excuse based on his attempt to circumvent the injunction, and the contempt sanctions demonstrated he knew that by violating the injunction, he was infringing on the plaintiff's trademark and thereby causing the injury which necessarily flowed from the infringement. *Id.* at *17-*18.

The Court agrees with and follows the *Ocean Innovations*, *Mucci*, *Butler*, and *Treadwell* courts' approach to malice in the context of intentional trademark or patent infringement. As the *Butler* court noted, malice can be inferred from the nature of a debtor's acts. Viewing the Debtor's actions through the lens of the *Ocean Innovations* court's analytical framework, in intentionally infringing on the Plaintiffs' trademark, the Debtor necessarily deprived the Plaintiffs of their property and must have been substantially certain that such infringement would cause them economic and reputational injury. That injury was clearly foreseeable, and it is evident from Kerwin's testimony and the documentary evidence produced at trial that the Plaintiffs were harmed by the confusion among vendors, business associates, banks, and clients of the Plaintiffs and ECC Fitness as to with which entity they were dealing. The injury caused by that confusion is particularly acute and egregious where the Plaintiffs were being accused of initiating unauthorized transactions and failing to honor payment obligations that were attributable to ECC Fitness, not Xtreme Caged Combat. As such, this Court finds the injury to Plaintiffs resulting from the Debtor's intentional trademark infringement was inflicted without just cause or excuse, particularly in the absence of any evidence or testimony from the Debtor that his infringement was motivated solely by his own financial interests rather than a desire to injure the Plaintiffs by causing confusion and mistake

13

among the public. Like the *Butler* court, this Court finds it difficult to imagine a scenario where a debtor can justify willful and aggressive misuse of another's trademark in a way that is likely to, and in fact did, cause confusion, mistake and deception. Like the debtor in *Butler*, the Debtor here offered no just cause or excuse for his actions that would cause this Court to view them as anything but intended to inflict malicious injury on the Plaintiffs.

The Court finds the Judgment is a nondischargeable debt pursuant to §523(a)(6) because it represents a debt for willful and malicious injury.

## IV.     CONCLUSION

For the reasons discussed above, this Court will enter judgment on Counts 1, 2, and 4 of the Nondischargeability Complaint in favor of the Defendant, and judgment on Counts 2 and 5 of the Nondischargeability Complaint in favor of the Plaintiffs. An Order consistent with this Memorandum will be entered.

Dated: March 28, 2019

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Ryan Kerwin
240 Brittany Drive
Langhorne, PA 91047

Extreme Caged Combat
c/o Ryan Kerwin
240 Brittany drive
Langhorne, PA 19047

Christian A. DiCicco, Esquire
Law Offices of Christian A. DiCicco
2008 Chestnut Street
Philadelphia, PA 19103

14